UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ALLIANCE OF AUTOMOBILE MANUFACTURERS, )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>DAN A. GWADOWSKY, and )<br>G. STEVEN ROWE, ATTORNEY GENERAL )<br>FOR THE STATE OF MAINE,  )<br>)<br>Defendants,  ) | Civil Action Docket No<br>CV-03-154-B-W |

**MAINE AUTO DEALERS ASSOCIATION'S
MOTION FOR *AMICUS CURIAE* "PLUS" STATUS
WITH INCORPORATED MEMORANDUM OF LAW**

The Maine Auto Dealers Association ("MADA"), a trade association representing Maine's new motor vehicle dealers, all of whom are franchisees of one or more of the Plaintiff Alliance's members, hereby moves this Court to grant it *amicus curiae* "plus" status to participate in this matter on the side of the State.

**I.   ARGUMENT**

In *Maine v. Norton*, 203 F.R.D. 22 (D.Me. 2001), a number of environmental conservation groups moved to intervene as Defendants as of right or by permission pursuant to F.R.Civ.P. 24. The Court held that the proposed intervenors were not entitled to intervene as of right and declined to grant permissive intervention status, but held that the proposed intervenors could "on a proper application" be granted "*amicus* plus status," citing *Pharmaceutical Research & Manufacturers of America v. Commissioner*, 2000 W.L. 1844663 (D.Me. 2000). *Amicus* plus status provides: (1) that notice and service of all documents and events will be given to *amicus*

1

plus counsel as if the *amicus* were a party in the case; (2) that if there are witnesses at trial or deposition, it is permissible for one of the parties, if willing, to let the *amicus'* lawyer conduct an examination or cross-examination "in place of" the party's counsel (examination or cross-examination by both is not permissible); (3) the party on whose side the *amicus* wishes to participate is expected to "take full advantage of any offer of resources, evidence or assistance from the would-be intervenors . . .;" and (4) a motion to intervene may later be filed if the *amicus* has evidence that there is a divergence of interest between the *amicus* and the State or a lack of "adequate representation" as those terms are meant in Rule 24(a)(2) at some point in the case. See also, *Daggett v. Webster*, 190 F.R.D. 12 (D.Me. 1998).

The Plaintiff, Alliance of Automobile Manufacturers, a trade association, has brought this action against the State of Maine, challenging the constitutionality of certain recent amendments to Maine's Motor Vehicle Franchise Law, 10 M.R.S.A. § 1171, et seq., (the "Act") alleging violations of the commerce, contracts and takings clauses of the U.S. Constitution. The Alliance seeks declaratory and injunctive relief and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988. The matter is being defended by Maine's Attorney General.

MADA, on behalf of its members, strongly supports the recent amendments to the Act for reasons that will be described below, and wishes to move to intervene in this action. MADA recognizes, however, that the prevailing case law in this district makes it unlikely that, at this point, such a motion would be granted given that the Attorney General is defending this action. See e.g., *Daggett v. Webster*, 34 F.Supp.2d 73 (Me. 1999); *Daggett v. Webster*, 190 F.R.D. 12 (D.Me. 1999); *Maine v. Norton*, supra; but see *NYNEX Corp. v. Federal Communications Commission*, 153 F.R.D. 1 (D.Me. 1994) (permitting industry association to intervene as of right because of industry association's "interest in maintaining a competitive market and prohibiting

2

monopoly control . . .;" granting intervention in part because the FCC "will defend this case from the perspective of the overall national public welfare, while [the industry association] will present a much more localized perspective . . . ."); *State of Maine v. Thomas*, 690 F.Supp. 1106 (D.Me. 1988) (allowing plaintiff intervenors including, by permissive intervention, National Parks & Conservation Association, and defendant intervenors including 64 individual electric utility companies; in this case, intervention motions were granted to interested groups or companies where both sides involved government litigants as the principal parties); and see also, *General Motors Corp. v. Burns,* 50 F.R.D. 401, 402-403, 404-406 (D.Haw. 1970) (Hawaiian Auto Dealers Association met interest requirement of Rule 24(a) in defending statute of interest to dealer membership; Auto Dealers Association's unique knowledge and access to facts indicates government may be inadequate representative).

     MADA is a corporation organized and existing under the laws of the State of Maine with a principal place of business in Augusta, Maine. MADA is an association of franchised new car and truck dealers with approximately 139 members located throughout the State. All franchised new car and truck dealers in Maine are members of MADA. MADA represents the interests of its members as they arise in various contexts, including with respect to legislation affecting its membership. Among the activities in which MADA engages for its members are proposing and lobbying for and against legislation of concern to the membership. MADA also engages in litigation where its members interests' are at stake.

     MADA has proposed language for, supported, and lobbied for the Act since its original enactment in 1975 and did so with respect to the specific amendments challenged in the Complaint. Further, as this Court is aware, MADA and some of its members have engaged in protracted legislative activities and litigation in this court and in the Maine courts to compel

automobile manufacturers to obey Maine law with respect to reimbursement for parts and labor related to warranty work under 10 M.R.S.A. § 1176, one of the sections of the franchise law amended by the challenged enactments. See *Acadia Motors, Inc. v. Ford Motor Co.*, 44 F.3d 1050 (1st Cir. 1995); *Darling's v. Nissan Motor Corp.*, 863 F.Supp. 26 (D.Me. 1994); *Acadia Motors, Inc. v. Ford Motor Co.*, 844 F.Supp. 819 (D.Me. 1994); *Darling's v. Ford Motor Co.*, Docket No. 95-398-B-H, Slip Op. (D.Me. April 1, 1998); *Darling's v. Ford Motor Co.*, 825 A.3d 344 (Me. 2003); *Acadia Motors v. Ford Motor Co.*, 799 A.2d 1228 (Me. 2002); *Darling's v. Ford Motor Co.*, 719 A.3d 111 (Me. 1998).[1]

Further, MADA's members are not only within the zone of interest that the Act was enacted to protect, they are the only Maine businesses directly protected by the Act. In the short term, the Act protects and benefits Maine's auto dealers and their many employees against the motor vehicle franchisors represented by the Alliance, corporations that are many times the size of the dealers with disparate and oligopolistic economic and bargaining power. Ultimately, the Act and particularly Section 1176 benefits Maine's consumers. MADA believes it is particularly important to participate in this action to represent the welfare of its member dealers, whose continued financial viability is directly related to the conditions of their relationship with the franchisors.

One of the challenged amendments made changes to the new vehicle warranty reimbursement provisions of 10 M.R.S.A. § 1176. As the above cases involving Section 1176 explain in detail, Maine's Ford dealers, in particular, have been in protracted conflict with Ford Motor Co. with respect to warranty reimbursement. For many years, Section 1176 has required manufacturers to reimburse their dealers for labor and parts used in warranty work at their retail rates. For years, the manufacturers flouted and ignored the law, and reimbursed dealers at below

---

[1] In addition to the reported cases, there were a number of Maine District Court cases.

market rates, in direct contradiction to the words and intent of Section 1176 and thus have created a situation that causes dealers and/or consumers to pay for repair work in a manner that subsidizes the manufacturers.  See LD 1235 (Statement of Fact) (Legis. 1991); LD 1878 (Statement of Fact) (Legis. 1980).  The "warranty parity surcharge" imposed by Ford to "recover" retail reimbursement, which has been the subject of much litigation, has the same effect.

The other portion of the statute challenged by the Alliance sets up an adjudicatory board for hearing, in the first instance, disputes under the law between motor vehicle franchisees and franchisors.  Again, MADA's membership is directly affected by the challenged amendment.

Virtually every state in the country has statutes regulating the relationship between motor vehicle dealers and manufacturers.  Many, if not most of these also regulate the rate at which manufacturers must reimburse dealers for warranty work.  See, e.g., *Acadia Motors v. Ford Motor Co.* 844 F.Supp. at 827 n.11, citing statutes at 844 F.Supp. at 827, f. 11.  These statutes protect motor vehicle dealers from oppression by manufacturers, who by virtue of their size and the nature of the industry, would otherwise be able to control directly and unfairly the fates of the usually locally owned dealerships.  In turn, protection of the franchisees works to protect the interests of consumers.  The instant action, thus, is critically and directly important to MADA's members.  MADA believes that this Court should therefore grant it "*amicus* plus" status so that it can participate in this action, and, if and when appropriate, it can then move to change its status to that of an intervenor.  MADA's participation will have much in common both factually and legally with the State's defense, but because of MADA's intimate connection with the dealership population, MADA may be helpful "in fully developing the case," see *Daggett*, 172 F.3d at 113-114, by readily supplying witnesses (and other evidence) who can testify as to the relationship

5

between the requirements of the subject statutes and their legitimate state purpose and other relevant factors.

MADA has contacted counsel for the State and the Alliance concerning this motion. The State does not object. The Alliance does object to this motion.

In view of the foregoing, MADA respectfully requests that the Court grant it "*amicus* plus" status in this action.

Dated at Portland, Maine this 9th day of October, 2003.

          /s/ Michael Kaplan
Bruce C. Gerrity, Esq.
Michael Kaplan, Esq.
Roy T. Pierce, Esq.
Attorneys for Maine Auto Dealers Association

PRETI, FLAHERTY, BELIVEAU, PACHIOS
    && HALEY, LLC.
One City Center
P.O. Box 9546
Portland, Maine 04112-9546
(207) 791-3000
bgerrity@preti.com
mkaplan@preti.com
rpierce@preti.com
C:\NrPortbl\PORT\NNREED\494639_1.DOC